George Starke, J.
The landlord’s claim of subletting without its consent is the basis for this holdover proceeding.
The facts have been stipulated. In 1943 the landlord leased a five-room law suite at 570 Seventh Avenue, New York City, to Rothenberg, Polstein & Lippman, for a term expiring in 1948. The lease forbade subletting without the landlord’s consent. However, as is so customary, particularly among attorneys, the tenants immediately sublet various portions of their suite. Not only did the landlord recognize the prevailing custom and acquiesced, but listed the names of the subtenants on the lobby directory and on the tenants’ entrance door. From 1943 to 1948, subtenants went and other came, and with each change in subtenants, a corresponding change was made on the directory and entrance door. At no time was any objection voiced. In 1948, Rothenberg alone executed a lease to expire in 1951, which provided that it was subject to Polstein’s rights as a statutory tenant. No delineation was made as to Polstein’s space. Simultaneously with the execution of this lease, the landlord, by a separate instrument, agreed in writing (addressed to Rothenberg and Polstein) that “ you are hereby permitted to sublet a portion of the said premises to your present subtenants or to any replacements of them.” Again, from 1948 to 1951, there were changes in subtenants reflected by changes in listings on the directory and entrance door. Since 1951, Rothenberg continued in possession as a statutory tenant. From 1951 to *112 December, 1957, subtenants again came and went and the lobby-directory and door showed each change. In December, 1957, one of the subtenants moved and Eothenberg sought to replace him. However, the landlord refused to list on the directory the name of the proposed subtenant. In February, 1958, Eothenberg sublet to Fern that portion of the space formerly occupied by the previous subtenant, Feldberg. The landlord refused to list Fern’s name (the replacement) and commenced this proceeding against Polstein as well as Eothenberg, claiming the subletting to Fern to be a. breach of a substantial obligation of tenancy.
This proceeding might well be disposed of on the basis of a waiver in effect since 1943, and the acceptance of rent for many years with knowledge of the custom and continuous sublettings. (Woollard v. Schaffer Stores Co., 272 N. Y. 304; Werber v. Weinstein, 207 Misc. 707 and cf. Ornstein v. 1440 Associates, 11 Misc 2d 793.)
However, the landlord contends that the basic issue here is whether the right to sublet is projected into a statutory tenancy, and reliance that it is not, is placed on Leventhal v. 128 West 30th St. Corp. (158 N. Y. S. 2d 398); Bisbano v. 42-20 Restaurant Corp. (280 App. Div. 790) and a case decided by this court — Fifth Ave. Realty Corp. v. Lynch (10 Misc 2d 391).
In the Leventhal case, there was no waiver, no history of sub-lettings and, in fact, no right to sublet without the landlord’s consent (that could be withheld unreasonably). In Bisbano, the determinative issue was whether a statutory tenant had an assignable estate. While in the Lynch case, the right to sublet was specifically limited to the term of the lease, and then only with the landlord’s consent. Obviously, when the lease expired, the right to sublet ended.
Here, the operative issue is whether a waiver of long standing and an unlimited right to sublet is projected into the statutory tenancy. The answer is in the affirmative.
The long history of sublettings here extended for nearly 15 years, with full knowledge of the landlord. In writing, the landlord confirmed this right and expressly sanctioned sub-lettings, unlimited in time and space. The sublettings commenced before the advent of the commercial rent laws and continued throughout the statutory tenancy. At this late date, the landlord may not be heard to complain of a waiver which it tolerated for many years and permitted to ripen into a right. The situation here is no different from Kingdale Realties v. Sherry (106 N. Y. S. 2d 796), wherein it was held: “In this proceeding the tenant was in possession as statutory tenant *113 after the expiration of written lease which contained a provision against subletting. The landlord waived this provision over a period of years and such waiver had the effect of nullifying the restriction in the lease. ’ ’
That right, nurtured in custom, nourished by waiver and effervesced by a specific grant, may no longer he restricted or revoked. It is part of the tenancy, and: “ If the subleases by the tenant had been authorized by the landlord, the latter would, in the court’s opinion, have been obliged to list the names of the sublessees on the directory tablet in the lobby of the building. Such listing was an indispensable appurtenance of the right to use the subleased space on the twelfth floor of the landlord’s building. The value of the use of the space would be substantially reduced, if not destroyed, if the names of the sublessees were not listed on the directory tablet.” (92 Liberty St. Corp. v. Dooney, 116 N. Y. S. 2d 44.) An interference with that right might even spell out a partial eviction abating the payment of rent. (See Ornstein v. 1440 Associates, 11 Misc 2d 793, supra.)
Decision was reserved on the admissibility of a letter advising Rothenberg that after the expiration of his lease in 1951, he would be a statutory tenant. The letter neither adds nor detracts from the admitted facts. It merely confirms a status the tenant would have had in any event under the emergency rent laws. (See Fischel v. Steel Management Co., 286 App. Div. 780.)
There being no violation of a substantial obligation of tenancy by the subletting herein, final order is hereby made in favor of the tenants, dismissing the landlord’s petition on the merits.